# COURT OF ERRORS AND APPEALS

OF

## THE STATE OF NEW JERSEY,

### ON APPEAL FROM THE COURT OF CHANCERY.

#### NOVEMBER TERM, 1861.

~~~~~~~~~~

CHARLES F. DURANT, appellant, *and* CHARLES B. F. BACOT and others, respondents.

On a bill filed to reform an alleged mistake in the description of a lot of land conveyed by deed of bargain and sale, where the allegation of complainant was, that the deed sought to be reformed was made to correct a former deed between the same parties, which was erroneous in consequence of a mistake of the parties in supposing that two streets, at the intersection of which the lot was located, intersected each other at right angles, and that the object of making the second deed was to square the lots, and to make the westerly line of complainant's lot perpendicular to one of said streets, when in fact the land conveyed by the second deed was not sufficient for the purpose intended, and that to accomplish that object would require complainant to have nineteen feet more of land on the turnpike than was actually conveyed to him, it was *held*—

That although there was some parol evidence to show that, at the time the second conveyance was made, the parties supposed it would square the complainant's lot with the turnpike, and make the westerly line perpendicular thereto, yet where there is no evidence to show that the grantor had any intention to convey more land than he did convey, or that he

would have sold more than he did, unless he had been paid an additional price, or that the grantee got less land than he bargained for or paid for the deed will not be reformed.

A deed for lands, after it has been deliberately reduced to writing, executed, acknowledged, and recorded, and has remained unquestioned for, many years, should not be disturbed or made different from what the parties made it on any feeble or inconclusive evidence.

It may well be doubted whether a court should even attempt to reform a deed upon verbal testimony alone when the alleged mistake is denied.

This case came up on appeal from the decision of the Chancellor dismissing the complainant's bill. The opinion of the Chancellor will be found in 2 *Beasley*, *p.* 201.

It was argued in the Court of Appeals by

*J. Weart*, for appellant.

*A. O. Zabriskie*, for respondents.

The opinion of the court was delivered by

VAN DYKE, J. The object of the bill in this case is to reform and correct an alleged mistake in the description of a lot of land, situate in Jersey City, on the north side of Newark avenue, and on the west side of Warren street, at or near the intersection of the two streets. The description is contained in a deed from John Van Vorst to William Durant, dated the twelfth day of October, 1830, which lot of land is now owned by the complainant.

The complainant alleges, in his bill, that, in the year 1827, the said John Van Vorst, for the consideration of $100, sold and conveyed to the said William Durant a lot, fifty feet front and one hundred feet deep, on the north side of said Newark avenue and on the westerly side of said Warren street, and in the corner formed by the intersection of the two streets; that, at the time Warren street, although laid out, had no visible existence, and that the precise place of its location was unknown, but that it was believed it crossed Newark avenue at right angles.

That the said William Durant took possession of the said lot, and built thereon two frame buildings, occupying the

whole of the front of the said lot; that it was afterward discovered that the said streets did not cross each other at right angles, but in such way that they would form a very acute angle at such intersection; and that, as a consequence, the buildings so erected were not wholly on the lot so conveyed, but projected over and covered other lands of the said John Van Vorst.

That to remedy this difficulty, and with intent to make the lot of Durant square on the turnpike road, and his westerly line perpendicular thereto, he, on the twelfth of October, 1830, for the consideration of $25, purchased of said John Van Vorst sufficient land on the westerly side of said lot to make the land of said Durant square with the said turnpike road, and the westerly line thereof perpendicular thereto; that the land so purchased was a certain gore piece of land, and was particularly described in the deed of conveyance for the same, as " all that certain half lot, gore, piece, or parcel of land, situate, lying, and being in the town of Jersey, in the township, county, and state aforesaid, and lying on the north side of the turnpike road leading from and through the town of Jersey aforesaid to the town of Bergen, butted and bounded on the northwesterly line of Charles F. Durant's lot, fronting on the said turnpike road twenty-six feet from the line of said Charles' lot, and thence running diagonally to the rear of said Charles' lot, forming a triangle, the base of which, lying along the line of said Charles' lot, is one hundred feet deep from said turnpike road, and the perpendicular along said road twenty-six feet;" that the object, intention, and agreement of the parties to such conveyance was to give Durant a lot fronting square on said turnpike road, and to make his westerly line thereof perpendicular thereto, and that the distance of twenty-six feet along the turnpike road was inserted in the deed upon the supposition that the same would reach a point that would make said lot square as aforesaid, and the westerly line perpendicular to said road, but that, in point of fact, it requires a distance of fifty-five feet along said road to make the lot square as aforesaid,

2 M

and to reform and correct the last mentioned deed by extend-
ing the line along said road to the distance of fifty-five feet,
instead of twenty-six feet, is the object of the bill. All these
allegations of the bill, so far as they charge or state that
the object or intention of the parties to the deed was to make
it different from what it appears to be on its face, or to ex-
tend the line on the turnpike beyond the twenty-six feet, or
to make Durant's westerly line at right angles with said
road, or that it was the intention of the parties to it, in any
way or manner, to include any more land in the deed than
the twenty-six feet front would cover, or that there was any
mistake or misunderstanding about it, are all explicitly de-
nied in the answer; and this places the complainant under
the necessity of proving all the material allegations in his
bill. Has he done so, is the important and controlling ques-
tion in the case. It matters not what else he may have
proved. If he has not proved these important matters, his
case cannot be sustained.

It may be observed here that evidence to sustain such a
claim should be of the most satisfactory kind. A deed for
lands, after it has been deliberately reduced to writing, de-
liberately signed and sealed, and acknowledged and placed
upon the public record of the county, and when such deed
has remained unquestioned for a long period of years, should
not be disturbed and altered, and made different from
what the parties made it on any feeble or inconclusive evi-
dence. It should be so clear and certain as to leave little, if
anything, for doubt. Title to land by bargain and sale can
only take place by writing and seal, and it may well be
doubted whether a court should ever attempt to reform a
deed upon verbal testimony alone when the alleged mistake
is denied; but assuming that this may be done, what has
the complainant proved in this case to justify the court in
exercising this important but somwhat dangerous power?

The only evidence that can be considered as bearing upon
the case at all is that of Jonathan I. Durant and Samuel Cas-
sedy. According to the evidence of Mr. Durant, the object

of the parties in making the second deed was to square the lot, but this they certainly did not do—for while they added the twenty-six feet gore on the west they left the east side the same as it was before, and thereby made Durant's lot seventy-six feet in front, and fifty in the rear, which was far from being square; and if they had added fifty-five, instead of twenty-six feet on the turnpike, it would still be far from square.

The testimony of Mr. Cassedy is very much to the same purport; their object, according to him, seemed to have been to square the lot, and this was to have been done by adding more land on the westerly side. Nothing seems to have been said or done about giving up any land on the east side in compensation for what was added on the west by way of squaring the lot, and nothing appears to have been contemplated—certainly nothing was done, except to purchase additional land on the westerly side. Durant fixed the quantity which he would need to accomplish his purpose at twenty-six feet in front, and nothing in the rear. Mr. Van Vorst agreed to sell him the quantity thus named for twenty-five dollars, which he did, and made the deed acordingly. This was the whole of the transaction in substance. It may be true that all parties at the time were under the impression that the quantity thus added would make the westerly line at right angles with the road, or nearly so; but no pains were taken to see whether it were so or not, and there is not a particle of evidence to show that Van Vorst had the slightest intention of selling or conveying any more land than he did then convey, or that he would have sold a foot more of land than he did sell, unless he had been paid an additional compensation therefor, Durant got the whole length that he asked for and all that he bargained for, and he paid for nothing that he did not get. On what principle it is, then, that he now claims that which he never asked for, that which he never bargained for, and that which he never paid for, it is difficult to perceive.

I cannot see, from the evidence, that any deception was

practised or mistake made. If Durant did not think proper to have a measurement made of what he desired, but saw fit to make a guess on the subject, and it turned out that the purchase did not answer his purpose quite as well as he expected it would, it was an error of his own alone, but it furnished no reason, then or now, nor at any after time, for compelling Mr. Van Vorst or his descendants to convey to him other lands never asked for, or purchased or paid for, and without any additional compensation, so that his original design, if he had one, of having his westerly line at right angles with the road, might be carried out.

It may also be remarked of this evidence, that if it were much more clear and explicit in its terms than it is, it would still be dangerous in the last degree to rely upon in so important a matter. However intelligent and upright the witnesses may have been, they are called on, after a lapse of nearly thirty years, to detail not so much the acts of the parties, for their acts are all the other way, but to repeat the conversations they had, as well as the casual remarks of the parties. That such accounts of such conversations should be allowed to prevail over the solemn deed actually made and executed by the parties at the time would seem to be strange indeed. It would be substituting memory, in its frailest form, for the highest and most reliable evidence known to the law.

But the complainant insists that his claim is sustained by the description in the deed itself. If this were so, it would scarcely be necessary to ask to have it changed. The word " *perpendicular*," which is the only one relied on, as introduced into this description, is wholly meaningless and of no significance at all. We are informed, by the description, that the lines, courses, and distances given form a triangle, the base of which, that is the base of the triangle, is along the northwesterly line of Charles F. Durant's lot one hundred feet, and the perpendicular, that is the perpendicular of the triangle, is along the said road twenty-six feet, but what the road, which is made the perpendicular of the triangle, is perpendicular to we are in no way informed. The

natural inference is that it means perpendicular to the base; for that is the last and only other line spoken of in the description of the triangle, *as such*. If it means this, the word is very improperly used, for the base of the triangle, as given, is the easterly line of the lot thereby conveyed, which it is manifest enough is very far from being perpendicular to the turnpike road. If perpendicular to the westerly line is meant, and it does not say so, it is almost as far from the truth; for that line, made to commence twenty-six feet from the lot first conveyed, and running thence to the rear thereof, is also far from being perpendicular to the road.

But what must entirely overthrow the construction contended for by the complainant, if the deed be appealed to, is that, in describing the westerly line, it is not only not termed a perpendicular, but it is in express language called a *diagonal* line, running "diagonally" from the turnpike. Why the parties and their scriveners should have used the word diagonally, if they all understood it to be perpendicularly, it is difficult to see. The claim, then, is weakened much more than strengthened by an appeal to the deed itself. But if it were expressed in unmistakable terms that the westerly line was perpendicular to the road, it would not and could not prove that Durant did not get every inch for which he bargained and for which he paid, nor would it prove that the parties, or either of them, intended to include any more land in the deed than what is therein clearly enough expressed.

The complainant, in the argument of his own case, which he did in the most learned, scientific, and artistic manner, seems to think that he has discovered in the defendant's answer, in their evidence, and also in the opinion of the Chancellor, something that is not accordant with his views of the innumerable angles and triangles, and every other kind of angles which he exhibited, and to which he referred, something that is not exactly perpendicular, some departure from the *radius vector* or disregard of Kepler's second law. This may all be so. I shall not question it—for I do not think that either ordinary or extraordinary skill and attainments can

solve all the remarkable propositions for which he contended; but if we admit them all to be true, I do not see that they throw any light whatever on the important but very plain question on which we are to decide. I do not see that they go one step toward proving that there was any design, intention, or understanding by the parties, or either of them, to the deed of 1830, that Durant was to have fifty-five additional feet on the turnpike, instead of twenty-six, or that his deed does not cover to the full the entire area of ground that it was intended to cover.

I think, therefore, that the evidence wholly fails to sustain the claim that the complainant has made, and that the Chancellor's decision dismissing the bill is right.

*For affirmance*—BROWN, COMBS, CORNELISON, ELMER, KENNEDY, VAN DYKE, WHELPLEY, WOOD—8.

*For reversal*—None.